# In the United States Court of Federal Claims

No. 11-181 C

(E-Filed Under Seal: April 15, 2011)[1]
(E-Filed: May 6, 2011)

|  |  |
|---|---|
| NORTHEAST MILITARY SALES, INC., | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) ) | Bid Protest; Motion to Compel the Production of Documents to Supplement the Administrative Record |
| THE UNITED STATES, | ) ) |
| Defendant. | ) ) ) ) ) |

Ira Eliot Hoffman, Potomac, MD, for plaintiff.

Lauren A. Weeman, with whom were Tony West, Assistant Attorney General, Jeanne M. Davidson, Director, Franklin E. White, Assistant Director, Commercial Litigation Branch, United States Department of Justice, Washington, DC, for defendant; Helen J.S. White, Assistant General Counsel for the Defense Commissary Agency, Washington, DC, of counsel.

OPINION AND ORDER

---

[1] This Opinion was filed under seal on April 15, 2011, Docket Number (Dkt. No.) 32. The court instructed the parties to file any requests for the redaction of protected material on or before Wednesday, April 20, 2011 at 12:00 noon Eastern Daylight Time. The parties did not file any requests for redaction.

HEWITT, Chief Judge

Before the court are Plaintiff's Motion to Compel the Production of Documents to Supplement the Administrative Record (plaintiff's Motion or Pl.'s Mot.), filed April 11, 2011, Docket Number (Dkt. No.) 21; Defendant's Response to Plaintiff's Motion to Compel the Production of Documents to Supplement the Administrative Record (Def.'s Resp.), filed April 14, 2011, Dkt. No. 29; and Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Compel the Production of Documents to Supplement the Administrative Record, filed April 15, 2011, Dkt. No. 31.

I. Background

This is a post-award bid protest brought by Northeast Military Sales, Inc. (Northeast, NEMS or plaintiff), a bidder in Solicitation No. HDEC02-10-R-0005 (Solicitation, Request for Proposals or RFP) issued by the United States government acting through the Defense Commissary Agency (DeCA, the agency, the government or defendant).  Pl.'s Mot. for J. on the Administrative R. (Pl.'s Mot. J.), Dkt. No. 19, at 1.  Plaintiff challenges defendant's decision to award Contract No. HDEC02-10-D-0008 to Nayyarsons Corporation (Nayyarsons or Nayyar Sons).  Pl.'s Mot. J. 1.

Plaintiff requests that the court order defendant to correct the Administrative Record (AR) by including the following documents:

> All documents that the Contracting Officer stated she "looked at" concerning the awardee's and protester's "sales to date";
>
> DeCA Inspector General Reports Nos. IG-10-12, IG-10-30, and IG-10-31;
>
> "Deli-Bakery Report," which is compiled by DeCA monthly and was obtained by Plaintiff under the Freedom of Information Act (FOIA), 5 U.S.C. § 552;
>
> Core Items price surveys compiled by Nayyar, submitted to DeCA, and obtained from DeCA by Plaintiff under FOIA; and
>
> DeCA Self Inspection Food Hazard Control Checklists, DeCA Form 40-92.

Pl.'s Mot. 1-2 (footnote omitted).

Defendant states that other than the "sales to date" documents, "DeCA considered none of the documents during the evaluation or re-evaluation process." Def.'s Resp. 2. In addition, defendant contends that "contrary to NEMS's assertion, none of the documents is necessary to fill gaps in the existing administrative record so that the Court may perform meaningful review." Def.'s Resp. 2. According to defendant, the "standard for supplementation is significantly greater than mere 'relevancy,' as plaintiff suggests. Def.'s Mot. 2; see Pl.'s Mot. 8.

II. Legal Standards

"As a general rule, when considering motions for judgment on the administrative record within the context of a bid protest proceeding, the court focuses its review on the administrative record already in existence." Emerald Coast Finest Produce Co. v. United States, 76 Fed. Cl. 447, 448 (2007) (quotations omitted); Camp v. Pitts, 411 U.S. 138, 142 (1973). "The purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to convert the arbitrary and capricious standard into effectively de novo review." Axiom Res. Mgmt., Inc. v. United States (Axiom), 564 F.3d 1374, 1380 (Fed. Cir. 2009) (quotations omitted).

In Axiom, 564 F.3d at 1381, the United States Court of Appeals for the Federal Circuit (Federal Circuit) held that the United States Court of Federal Claims (Court of Federal Claims) abused its discretion because it did not first determine whether "supplementation of the record was necessary in order not to frustrate effective judicial review" before allowing supplementation of the administrative record:

> The focus of judicial review of agency action remains the administrative record, which should be supplemented only if the existing record is insufficient to permit meaningful review consistent with the [Administrative Procedure Act]. Faced with the request to supplement the administrative record in this case, the Court of Federal Claims should have determined whether supplementation of the record was necessary in order not "to frustrate effective judicial review."

Axiom, 564 F.3d at 1381 (quoting Camp, 411 U.S. at 142-43).

III. Discussion

The determination of whether to supplement the Administrative Record assembled by defendant is made in the context of the particular solicitation in dispute. Where, as here, the Solicitation indicates that the agency will consider all materials of a particular type in its

3

evaluation of offers, the Administrative Record is not complete if it omitted any such materials.

In this case, the Solicitation announced that in connection with the evaluation of past performance, the agency "will consider <u>all</u> in-house information" and that "[t]he evaluation of past performance will be an assessment based on a consideration of all relevant facts and circumstances":

> In evaluating past performance, the Government will use the references provided by the offeror and other sources of information, including, but not limited to: federal, state and local Government agencies, better business bureaus, published media, and electronic databases. <u>The Government will also consider all in-house information available</u>, such as, but not limited to, the offeror Performance Evaluations (DeCA Form 10-17), past performance surveys, emails and correspondence on file regarding an offeror's performance on current DeCA contracts. <u>The evaluation of past performance will be an assessment based on a consideration of all relevant facts and circumstances</u>.

AR Tab 2, at 29 (emphasis added).

Plaintiff asks the court to supplement the AR "with documents generated by DeCA for purposes of monitoring contracting performance." Pl.'s Mot. 3. The court agrees with plaintiff that "[t]hese documents were certainly required to [be] reviewed by the [Solicitation]." Pl.'s Mot. 3. Having stated that "it will consider all in-house information available," AR Tab 2, at 29, the agency was required by the Solicitation to do so and, therefore, "all in-house information" that existed at the time of the initial evaluation of proposals must be included in the AR.

A.     Sales to Date

The Addendum to Decision Summary Document provides that:

> In an effort to determine the degree of success of Nayyar Sons in accomplishing its sales projections, the Contracting Officer looked not only at Nayyar Sons sales to date on HDEC02-10-D-0004 and 0005, but also at the first six months of performance on DeCA's nine other deli bakery contracts.

AR Tab 22, at 2802. Plaintiff contends that these "sales to date" documents should be in the AR because the Contracting Officer (CO) "looked at" them. Pl.'s Mot. 2.

After reviewing plaintiff's Motion, "DeCA determined that it inadvertently failed to include documents concerning Nayyarsons's sales to date on its existing DeCA contracts that were reviewed during the evaluation process and that the contracting officer referenced" in the Addendum to Decision Summary Document.  Def.'s Resp. 7-8; AR Tab 22, at 2802 (the CO looked "at Nayyar Sons sales to date on HDEC02-10-D-0004 and 0005").  Defendant then filed its Second Motion to Correct and Amend the Administrative Record, which the court granted in its Order of April 14, 2011.  The "sales to date" documents that the CO looked at and that plaintiff contends should be in the AR, specifically, "Nayyar Sons sales to date on HDEC02-10-D-0004 and 0005," are now in the AR pursuant to the court's Order of April 14, 2011.

      B.    IG Reports

Plaintiff contends that the IG Reports "contain information showing noncompliant performance by Nayyar" at F.E. Warren Air Force Base (AFB), Scott AFB, and Peterson AFB.  Pl.'s Mot. 2.  According to plaintiff, because F.E. Warren AFB is located in Wyoming and Peterson AFB is located in Colorado, the IG Reports "contradict DeCA's assertion . . . that the 'only negative past performance information found on Nayyar Sons was regarding the contract for operations East of the Mississippi River.'"  Pl.'s Mot. 2 (quoting AR Tab 22, at 2789).  Therefore, plaintiff contends, the IG Reports are "relevant to the past performance reevaluation and should have been considered by DeCA in its final decision."  Pl.'s Mot. 8.  Accordingly, plaintiff argues that these documents be included in the AR under RCFC Appendix C § 22(o) and <u>Acrow Corp. of Am. v. United States</u>, 96 Fed. Cl. 270, 275 (2010).  Pl.'s Mot. 8.

Defendant contends that it is "questionable whether [some of the IG Reports] even existed when DeCA was performing the evaluation of proposals," and DeCA "cannot have been required to have considered them and they should not be before the Court" if they post-date the evaluation.  Def.'s Resp. 9.  In addition, defendant argues that because "DeCA did not consider any of these [IG] [R]eports during the evaluation or re-evaluation," they should not be included in the AR.  Def.'s Resp. 9.  Defendant also contends that supplementation of the AR with the IG Reports is not necessary "in order for the Court to perform meaningful judicial review" because the AR "already contains considerable evidence regarding the past performance of both Nayyarsons and NEMS."  Def.'s Resp. 9 (citations omitted).  Additionally, "to the extent NEMS contends that these reports must be part of the administrative record because they were 'too close at hand to ignore,'" the argument fails because there is no prejudice to NEMS.  Def.'s Resp. 10.

Defendant's argument simply ignores the fact that the Solicitation provides that the

5

evaluation shall be "based on a consideration of all relevant facts and circumstances." AR Tab 2, at 29 (emphasis added). Whether the AR "already contains considerable evidence regarding the past performance of both Nayyarsons and NEMS," is not the test for supplementation of the record, as defendant suggests. Def.'s Resp. 9. If the IG Reports were in existence at the time proposals were evaluated and contained information bearing on past performance, the Administrative Record must be corrected to include such reports. Accordingly, the inclusion in the record of the IG Reports that existed at the time of the initial evaluation is necessary in order not "to frustrate effective judicial review." See Axiom, 564 F.3d at 1381.

    C.    Deli-Bakery Report, Core Items Price Surveys, and DeCA Self-Inspection Food Hazard Control Checklists

According to plaintiff, the Deli-Bakery Report "shows that Nayyar failed to meet its proposed 'Increase Sales' for a number of bases." Pl.'s Mot. 3. In addition, plaintiff contends that the Core Items Price Surveys "show not only that Nayyar failed to meet its proposed patron savings percentages on multiple items at numerous stores, but also that much of its purported savings were inflated." Pl.'s Mot. 3. Plaintiff also contends that the DeCA Self-Inspection Food Hazard Control Checklists "show repeated food safety violations by Nayyar at each commissary." Pl.'s Mot. 3.

Therefore, plaintiff contends, the Deli-Bakery Report, Core Items Price Surveys and DeCA Self-Inspection Food Hazard Control Checklists "are all relevant to the past performance reevaluation and should have been considered by DeCA in its final decision." Pl.'s Mot. 8. Plaintiff argues that these documents should be included in the AR under RCFC Appendix C § 22(o) and Acrow, 96 Fed. Cl. at 275. Pl.'s Mot. 8.

With respect to the Deli-Bakery Report, defendant states that it "did not exist when DeCA performed the initial evaluation," therefore, this information was not "'close at hand' during the evaluation period and NEMS was not prejudiced by DeCA's failure to consider it." Def.'s Resp. 11. Based on the defendant's representation to the court that the Deli-Bakery Report "did not exist when DeCA performed the initial evaluation," Def.'s Resp. 11, the AR shall not be supplemented with the Deli-Bakery Report.

Defendant contends that because the CO did not consider Nayyarsons's Core Items Price Surveys, they are not part of the AR. Def.'s Resp. 12. In addition, defendant contends that supplementing the AR with Nayyarsons's Core Items Price Surveys "while not adding similar information pertaining to NEMS, would unnecessarily complicate the record." Def.'s Resp. 12. However, the Solicitation provides that the evaluation shall be "based on a consideration of all relevant facts and circumstances." AR Tab 2, at 29 (emphasis added).

Because the Core Items Price Surveys allegedly "show not only that Nayyar failed to meet its proposed patron savings percentages on multiple items at numerous stores, but also that much of its purported savings were inflated," Pl.'s Mot. 3, the Core Items Price Surveys may contain potentially relevant "in-house information" which the government announced in the Solicitation that it will consider and, therefore, must be included in the record. The inclusion in the record of the Core Items Price Surveys is necessary in order not "to frustrate effective judicial review." See Axiom, 564 F.3d at 1381. Defendant may also include in the record any similar information pertaining to NEMS. See Def.'s Resp. 12.

Defendant contends that because the CO did not consider the DeCA Self-Inspection Food Hazard Control Checklists, they should not be included in the AR. Def.'s Resp. 13. In addition, defendant contends that the DeCA Self-Inspection Food Hazard Control Checklists contain information contained in other documents that were before the CO and are therefore duplicative, and should not be included in the AR. Def.'s Resp. 13. Defendant also contends that two of the DeCA Self-Inspection Food Hazard Control Checklists were not in existence during the initial evaluation. Def.'s Resp. 13.

The Solicitation provides that the evaluation shall be "based on a consideration of all relevant facts and circumstances." AR Tab 2, at 29 (emphasis added). The AR is not limited to information that is not "duplicative," as defendant suggests. Def.'s Resp. 13. Because the DeCA Self-Inspection Food Hazard Control Checklists allegedly show repeated food safety violations by Nayyar at each commissary, Pl.'s Mot. 3, the DeCA Self-Inspection Food Hazard Control Checklists may contain potentially relevant "in-house information" which the government announced in the Solicitation that it will consider. Accordingly, the DeCA Self-Inspection Food Hazard Control Checklists that existed at the time of the initial evaluation must be included in the record.

IV.   Conclusion

Based on the foregoing, plaintiff's Motion is GRANTED to the extent set forth in the foregoing Opinion and Order.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Chief Judge